UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-80279-Dimitrouleas/McCabe

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT M. DUBOIS, JR. and
JOAN C. DUBOIS,

    Defendants.
_____/

**REPORT & RECOMMENDATION ON DE 4**

THIS CAUSE comes before the Court upon Plaintiff's Motion for Preliminary Injunction ("Motion") (DE 4), which was referred to the undersigned by United States District Judge William P. Dimitrouleas (DE 7). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion (DE 4) be **DENIED.**

**I.    OVERVIEW**

This is a fraudulent transfer action brought by the Government against a delinquent taxpayer (hereafter "Son") and his mother (hereafter "Mother"). The Government alleges that Son fraudulently transferred a valuable asset, in the form of his interest in a state court trust-related lawsuit, to his Mother for no consideration in order to evade a $1.2 million tax judgment (DE 1). By way of this Motion, the Government seeks to enjoin Mother from dissipating the settlement proceeds of the lawsuit (DE 4).

## II. FINDINGS OF FACT

The Court held an evidentiary hearing on this Motion on April 19, 2023 (DE 30). Based on the evidence received and considered, the Court makes the following findings of fact.[1]

1. In 2016, Mother and Son filed a case in Florida state court, *DuBois v. Haley*, No. 502016CA001636XXXXMB (Fla. Cir. Ct. Feb. 16, 2016) ("*Haley*") (Ex. 7).[2] Later in 2019, Mother and Son filed a related companion case, *DuBois v. Perry*, No. 502019CA012675XXXXMB (Fla. Cir. Ct. Sept. 30, 2019) ("*Perry*") (Ex. 8). Together, the two cases alleged breach of fiduciary duty related to the administration of certain trusts to which Mother and Son were beneficiaries (Ex. 7-8).

2. As the *Haley* and *Perry* cases proceeded in litigation, in 2021, the Government filed a separate and unrelated case against Son for failure to pay income and other taxes, *United States v. Robert M. DuBois, Jr. and Kelly C. DuBois*, No. 9:21-cv-80624 (S.D. Fla.) (the "Tax Case") (Ex. 1 ¶¶ 4–5, Ex. 2).

3. On August 2, 2021, the presiding judge in the Tax Case entered a judgment in favor of the Government and against Son in the amount of $1,297,758.47, with interest accruing on an ongoing basis (the "Tax Judgment") (Ex. 3).

4. Thereafter, on January 18, 2022, the Government met with Son to discuss payment of the Tax Judgment (DE 4-1 ¶ 10). At the meeting, the parties discussed Son's assets, including

---

[1] To the extent that any findings of fact may constitute conclusions of law, they are adopted as such and vice versa.

[2] In making factual findings, the Court cites to documentary evidence admitted during the hearing and relevant portions of the record. The factual findings are also based upon, or supplemented by, the testimony as recalled by the Court, as the testimony has not been formally transcribed and made part of the record.

his interest in both the *Haley* and *Perry* cases (DE 4-1 ¶¶ 10-11).  These discussions did not result in an agreement (DE 4-1 ¶ 12).

5. The next day, on January 19, 2022, the parties in the *Haley* and *Perry* cases attended a combined mediation (Ex. 12 at 2, Ex. 13 at 2).  Although the case did not settle at mediation, settlement discussions continued, culminating in a global settlement confirmed by email on February 2, 2022 (Ex. 12 at 2, Ex. 13 at 2).

6. The settling defendants thereafter prepared a draft global Confidential Settlement Agreement and General Release (the "Settlement Agreement"), calling for the settling defendants to pay the sum of $665,000 to Mother and Son (Ex. 12 at 2, Ex. 13 at 2).  Counsel for Son responded on February 17, 2022, with an e-mail advising that "[Son] will not be a party to the settlement as he had previously assigned his entire interest in the action to [Mother]" (Ex. 12 at 2, Ex. 13 at 2).

7. This email prompted the settling defendants, on February 23, 2022, to file a Motion to Enforce Settlement Agreement in both cases (Ex. 12, Ex. 13).  A state court judge later granted both motions, finding that "all parties including [Mother and Son] entered into an enforceable agreement that included a meeting of the minds regarding the essential terms in the agreement" (Ex. 14, Ex. 15).  The state court ordered that "on or before April 18, 2022, [Mother and Son] are hereby ordered to execute and deliver to Defendants' counsel the [Settlement Agreement]" (Ex. 14, Ex. 15).

8. On April 11, 2022 – before the deadline set by the state court to sign the Settlement Agreement – Mother and Son each signed a document titled "Assignment, Delegation and Assumption Agreement" (hereafter the "Assignment") (Ex. 17).  By way of the Assignment, Son assigned all of his right, title, and interest in any settlement proceeds arising from the *Haley* and *Perry* cases to his Mother (Ex. 17).  The Assignment called for no consideration to be paid by

3

Mother, other than her agreement to indemnify Son from any claims, demands, or actions arising out of his share of the settlement proceeds (Ex. 17).

9.  Son's counsel, Peter Feaman, testified at length during the evidentiary hearing on this Motion. He testified that, although the Assignment was executed on April 11, 2022, Son had verbally agreed to make the Assignment at an earlier time. Attorney Feaman also testified that he advised Son to make the Assignment because he had concluded that Son's substantive claims in the *Haley* and *Perry* cases lacked merit.

10. At some point between April 11 and April 18, 2022, both Mother and Son complied with the state court order and executed the Settlement Agreement (Ex. 16), which called for the settling defendants "to pay [Mother and Son] a single total sum of Six Hundred and Sixty-Five Thousand Dollars and Zero Cents ($665,000), which shall be paid to the Peter M. Feaman P.A. Trust Account … within twenty (20) business days of the last signature to this Settlement Agreement" (Ex. 16 at 3).

11. As required by the Settlement Agreement, the settling defendants thereafter paid $665,000 to Attorney Feaman's trust account. Attorney Feaman then distributed a portion of these funds to Mother but, in accordance with the Assignment, distributed no portion to Son. Attorney Feaman also retained a portion for his attorneys' fees.

12. On September 22, 2022, the Government deposed Mother pursuant to post-judgment discovery on the Tax Judgment (DE 4-11). Mother confirmed that she received a portion of the settlement proceeds from Attorney Feaman, but she refused to answer how much money she received (DE 4-11 at 28:1–28:17). Mother testified that she invested the money, but she refused to identify the financial institution or answer whether she is currently spending the proceeds (DE 4-11 at 28:1–28:17).

13.     On February 22, 2023, the Government filed this action, alleging two counts against Mother and Son (DE 1). Count I seeks to foreclosure a tax lien on the settlement proceeds, wherever located (DE 1 ¶¶ 22-29). Count II alleges a fraudulent transfer action under federal and Florida law and seeks, among other things, to avoid Son's transfer of his interest in the settlement proceeds to Mother (DE 1 ¶¶ 31-35).

## III.     DISCUSSION

By way of this Motion, the Government seeks a preliminary injunction to enjoin Mother from directly or indirectly encumbering, transferring, spending, disposing, or otherwise dissipating the proceeds she received from the *Haley* and *Perry* settlements. Pursuant to 26 U.S.C. § 7402(a), this Court has jurisdiction to issue "orders of injunction ... as may be necessary or appropriate for the enforcement of the internal revenue laws." In applying § 7402(a), this Court must look to the traditional standard for preliminary injunctions set forth in Federal Rule of Civil Procedure 65. *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984). To prevail on this Motion, therefore, the Government must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered absent the injunction; (3) the threatened injury outweighs the potential damage of the proposed injunction; and (4) the injunction would not be adverse to the public interest. *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1354–55 (11th Cir. 2019).

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (cleaned up). The Court will address each Rule 65 factor in turn.

### A. Likelihood of Success on the Merits

Although the Government's complaint alleges two counts, this Motion turns on the Government's ability to prevail on Count II for fraudulent transfer.[3] To prevail on a fraudulent transfer claim under 28 U.S.C. § 3304(a)(1), the Government must show: (1) the transfer was made after the Government's claim arose; (2) the debtor did not receive reasonably equivalent value in exchange for the transfer; and (3) the debtor was insolvent at the time of the transfer. *United States v. Andrews*, No. 1:09-CV-112 (HL), 2011 WL 13323634, at *2 (M.D. Ga. July 13, 2011) (discussing the elements of a fraudulent transfer claim).

For purposes of this preliminary injunction, the Court finds the Government has not met its burden on element (2), namely, that Mother failed to pay reasonably equivalent value in exchange for Son's interest in the settlement proceeds. At the outset, the Settlement Agreement itself did not provide a breakdown of how the proceeds would be divided; it simply called for the settling defendants to pay a lump sum of $665,000 to the settling plaintiffs, i.e., Mother and Son:

> **Settlement Consideration**. As consideration for [Mother and Son] entering into this Settlement Agreement and in full and final release of the claims referenced herein, Arnold and Perry agreed to pay [Mother and Son] a single total sum of Six Hundred and Sixty-Five Thousand Dollars and Zero Cents ($665,000), which shall be paid to the Peter M. Feaman P.A. Trust Account … within twenty (20) business days of the last signature to this Settlement Agreement.

(Ex. 16 at 3).

The Government argues that "reasonably equivalent value" for Son's share of the lump sum payment should be one half, i.e., $332,500. The Government did not introduce any evidence to support that proposition, however, other than the language of the Settlement Agreement itself.

---

[3] Count I seeks to foreclose a tax lien (DE 1 ¶¶ 22-29). To the extent the Government seeks to foreclose this lien against the settlement proceeds currently owned by Mother, the Government must first prevail on Count II, which seeks to avoid the transfer of Son's interest to Mother.

Attorney Feaman, on the other hand, testified extensively about the value of Son's interest in the settlement proceeds. In his opinion, Son's interest had no value because discovery in the *Haley* and *Perry* cases had shown that Son lost his beneficial interest in the various trusts at issue in the two lawsuits. Attorney Feaman testified that he decided to maintain Son's status as a party in the cases because he strategized that a dismissal might lower the leverage in settlement negotiations. Had the cases proceeded all the way to trial, however, Attorney Feaman testified he would have dropped Son as a party prior to the first day of trial.

Although the Government cross-examined Attorney Feaman extensively about his opinions, the Government introduced no counter-evidence to rebut Attorney Feaman's conclusions regarding the trust-related issues. The Court finds Attorney Feaman's testimony to be credible.

As the moving party, the Government bears the burden of showing its entitlement to the "extraordinary and drastic remedy" of a preliminary injunction. *All Care Nursing Serv., Inc.*, 887 F.2d at 1537. This is especially true where the Government essentially seeks a pre-judgment freeze of assets in the possession of a third party by way of an injunction. The Court finds the Government has not met this burden. This does not preclude a different result at trial, where the Government might come forward with different evidence to rebut Attorney Feaman's opinion as to the value of Son's interest in the settlement proceeds.

Given this conclusion, the Court need not proceed any further. *See GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1329 (11th Cir. 2015) ("Failure to show any of the four factors is fatal" to a claim for a preliminary injunction.). Nevertheless, for the sake of completeness and for the benefit of the District Court, the undersigned will address the remaining Rule 65 factors.

### B. Irreparable Harm

As a general rule, "injury is 'irreparable' only if it cannot be undone through monetary remedies." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Accordingly, "preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority." *Rosen v. Cascade Int'l, Inc*, 21 F.3d 1520, 1530 (11th Cir. 1994).

The rule is different, however, when a plaintiff seeks equitable relief. As the Eleventh Circuit has recognized, "[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). In such circumstances, a court "may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible." *Id.*

In this case, the Government seeks equitable relief in the form of foreclosing a tax lien and avoiding a fraudulent transfer under 28 U.S.C. § 3306(a)(1) (DE 1 ¶¶ 22-29). Given the Government's request for equitable relief, the Court finds the traditional requirement of "irreparable harm" does not stand in the way of a preliminary injunction in this case.

Moreover, on September 22, 2022, the Government deposed Mother pursuant to post-judgment discovery on the underlying Tax Judgment. Mother refused to answer (a) how much money she received from the settlement proceeds, (b) where the money is currently located, or (c) whether she is currently spending it (DE 4-11 at 28:1–28:17). This testimony gives rise to a risk of dissipation of assets – a risk previously recognized as sufficient to support an injunction under

8

§ 7402(a). *See Grupo Mexicano de Desarollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 325–26 (1999) (discussing the Government's ability to obtain a temporary injunction under § 7402(a) to prevent further dissipation of assets, and distinguishing it from the usual remedies available to a plaintiff at law) (citing *United States v. First Nat'l City Bank*, 379 U.S. 378 (1965)).

### C. Balance of Interests

The Court finds the balance of interests favors the Government. If the Court wrongly enters a preliminary injunction, Mother will suffer minimal harm, as the Government seeks to freeze only a portion of the settlement proceeds she received. If the Court wrongly declines the preliminary injunction, in contrast, Mother may dissipate the settlement proceeds, such that the Government may never recover them. As such, this factor weighs in favor of a preliminary injunction.

### D. Public Interest

Finally, the Court finds the public interest favors a preliminary injunction. The Government's lawsuit seeks to enforce a tax lien for the collection of unpaid taxes. It goes without saying that collection of unpaid taxes serves the public interest.

### IV. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion be **DENIED**.

The parties shall have **ten (10) days from** the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the District Judge.[4] Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties

---

[4] The undersigned has shortened the time for objections because the of the expedited nature of the relief sought in the Motion.

9

from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 3rd day of May 2023.

                                              RYON M. MCCABE
                                              U.S. MAGISTRATE JUDGE